# UNITED STATES DISTRICT COURT

<u>NORTHERN</u>      DISTRICT OF  <u>ILLINOIS, EASTERN DIVISION</u>

UNITED STATES OF AMERICA

v.

NORINYE BENITEZ

**F I L E D**

NOV 0 6 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CRIMINAL COMPLAINT**

**07CR      731**

CASE NUMBER:
**MAGISTRATE JUDGE VALDEZ**

(Name and Address of Defendant)

I, Senior Special Agent Steven R. Fischer, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

### Count One

Beginning on or about August 15, 2007 and continuing to October 16, 2007, at Chicago, in the Northern District of <u>Illinois</u>, <u>Eastern Division</u>, defendant:

did, for the purpose of commercial advantage and private financial gain, conceal, harbor, and shield from detection illegal aliens, knowing and in reckless disregard of the fact that such aliens had come to, entered, and remained in the United States in violation of law;

in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii).

### Count Two

On or about <u>June 13, 2007</u>, at Chicago, in the <u>Northern</u> District of <u>Illinois</u>, <u>Eastern Division</u>, defendant:

did falsely represent, with an intent to deceive, a number to be the social security account number assigned to her by the Commissioner of Social Security, when in fact such number was not the social security account number assigned to her by the Commissioner of Social Security;

in violation of Title 42, United States Code, Section 408(a)(7)(B).

I further state that I am a  Senior Special Agent of Immigration and Customs Enforcement  and that this complaint is based on the following facts:

PLEASE SEE ATTACHED.

Continued on the attached sheet and made a part hereof:  _X_ Yes        ____ No

Steven R. Fischer, Senior Special Agent
Immigration & Customs Enforcement

Sworn to before me and subscribed in my presence,

November 6, 2007
Date

at      Chicago, Illinois
City and State

MARIA VALDEZ, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

## AFFIDAVIT

Steven R. Fischer, Special Agent, United States Immigration and Customs Enforcement

("ICE"), Chicago, Illinois, being duly sworn, deposes and states as follows:

1. I am a Special Agent with ICE and I have been employed by ICE (previously the

Immigration and Naturalization Service) for the past 10 years. I am currently assigned to the

ICE field office in Chicago, Illinois. I am an investigative or law enforcement officer of the

United States within the meaning of Title 18, United States Code, Section 2510(7), and I am

empowered by law to conduct investigations of, and to make arrests for federal criminal and

immigration offenses. My duties and responsibilities include, but are not limited to, the

investigation of federal immigration and identity document offenses under Titles 8 and 18

of the United States Code.

2. This Affidavit is in support of a complaint charging Norinye Benitez

("BENITEZ") with harboring illegal aliens, in violation of Title 8, United States Code,

Section 1324(a)(1)(A)(iii), and misuse of a social security number, in violation of Title 42,

United States Code, Section 408(a)(7). The following statements are based on my personal

knowledge, conversations with other law enforcement officers, Confidential Informants

("CI's"), and on my review of ICE and Social Security records and other documents related

to the investigation. These statements are presented for the sole purpose of obtaining a

criminal complaint. This affidavit does not contain all the details of the information known

regarding the events, persons or entities described herein.

## BACKGROUND

3. According to the Illinois Secretary of State Database, Ideal Staffing Solutions, Inc. ("Ideal Staffing") of 170 N. Pine Lane, Bensenville, Illinois 60106, became incorporated on May 9, 2003. This database states that Individual C is the President of the company, and Individual A is the Corporate Secretary. Ideal Staffing advertises as a temporary employment agency providing staffing for the following types of positions: light industrial work, forklift drivers, shipping and receiving clerks, data entry clerks, general office, administrative help, telemarketing, and manual labor.

4. The City of Chicago, Department of Aviation ("CDA") is the entity that operates the Chicago O'Hare and Midway airports. The CDA is identified and recognized as the airport operator by the Department of Homeland Security Transportation Security Administration ("TSA") under 49 CFR Part 1542 and Federal Aviation Regulation Part 139. The CDA is responsible for enacting and enforcing safety and security policies and procedures that protect and ensure the safe operation of the airport community. CDA issues ID badges that serve as both a form of identification and a means of access to secure areas at the airport facilities for people who work there.

5. At Chicago O'Hare International Airport (hereafter "O'Hare Airport"), the CDA issues green color-coded badges ("airport security badges") that allow unescorted access to airport's Security Identification Display Area ("SIDA") which includes the Aircraft

Operations Area ("AOA") as well as other secure areas. According to CDA policy, any person to receive a green color-coded security badge must have fulfilled the following requirements: (1) successful completion of the ID Badge Application and Security Threat Assessment ("STA"); (2) favorable results of an FBI, fingerprint-based, criminal history records check; (3) successful completion of SIDA training; and (4) an understanding and commitment to follow federal and CDA regulations.

6. On May 14, 2004 and October 20, 2004, Ideal Staffing submitted Tenant Authorization forms to the Chicago Department of Aviation. This form includes information about Ideal Staffing and authorizes Individual A and Individual B, as officers of Ideal Staffing, to obtain O'Hare International Airport security badges for Ideal Staffing employees. The forms submitted on the above dates were signed and authorized by Swissport Corporation because Ideal Staffing is a contractor of Swissport Corporation. The forms were signed by both Individual A and Individual B, listing Individual B as the president of Ideal Staffing, and Individual A as manager.

7. On March 27, 2007, I received information from Customs and Border Protection Inspector Matthew Kosten regarding Ideal Staffing, and the possibility that many of the company's employees were working at O'Hare Airport without proper authorization. Inspector Kosten conducted a law enforcement record check and found that a majority of the social security numbers associated with Ideal Staffing employees were considered "suspect" in that they were numbers that either did not exist or that belonged to other persons.

8. On April 30, 2007, I conducted a review of records submitted in support of Ideal employee airport security badge applications and found that fifty-one of the sixty-two Ideal Staffing Solution employees in possession of airport security badges at that time had submitted badge applications listing SSN's that either do not exist, or that belonged to other persons.

## INVESTIGATION

### BENITEZ's Hiring For Ideal Staffing

9. On May 9, 2007, a female confidential informant (hereafter "CI-2")[1], went to the Ideal Staffing office located in Bensenville, Illinois to try and gain employment. The contact with Ideal Staffing was conducted in the Spanish Language.[2] CI-2 met with BENITEZ, an employee of Ideal Staffing. This conversation was consensually recorded. CI-2 observed BENITEZ as she screened potential employees for available positions. BENITEZ explained to two potential male employees that they could go to work at the airport without having completed airport security badge applications.

----

[1] On or about July 14, 2004, this individual was registered as an ICE confidential informant. This CI has proven reliable and trustworthy in the past. Statements and information provided by this individual have been confirmed in consensually monitored conversation. This CI has also been used to purchase counterfeit documents from a large-scale fraudulent document manufacturing organization operating, among other places, in the Little Village neighborhood in Chicago, Illinois. In that investigation, the information provided by this CI proved reliable. This CI is now assisting ICE in this criminal investigation in exchange for parole status which means the person is allowed to remain in the United States legally.

[2] All phone and face-to-face conversations between CI-2 and BENITEZ discussed herein were in the Spanish language.

10.    During the May 9, 2007 interaction between CI-2 and BENITEZ, CI-2 stated that she had lost her identification documents and that she did not have a green card ("mica"). BENITEZ told CI-2 that she would need a green card ("mica") to work at the airport. CI-2 stated: "I know the number to the social security I was using. I won't be able to get one. I got one before on 26th Street but you know what happened?" To which BENITEZ replied: "Yeah those guys got caught." Based on my knowledge experience as an ICE agent, 26th Street in Chicago, is an area where sources for counterfeit identification documents such as Social Security cards are commonly known to be located. BENITEZ stated "You will need to have legal immigration status." However, when the CI-2 asked "Will they check my papers?" BENITEZ replied, "Not at that place. No. No. They just want to have everything in order, a social security, a ("mica') green card, or whatever you have."

11.    On July 2, 2007, CI-2 had a conversation with BENITEZ regarding the possibility of CI-2 gaining employment with Ideal. This conversation was consensually recorded. CI-2 presented identification documents to BENITEZ, which BENITEZ photocopied. This documentation included a counterfeit Social Security card. BENITEZ told CI-2 that she would be contacted at a later date.

12.    On July 30, 2007, a male confidential informant (hereafter "CI-1")[3] went to Ideal

---

[3] On or about July 14, 2004, this individual was registered as an ICE confidential informant. This CI has proven reliable and trustworthy in the past. Statements and information that provided by this individual have been confirmed in consensually monitored conversation. This CI has also been used to purchase counterfeit documents from a large-scale fraudulent document manufacturing organization operating, among

Staffing's Bensenville office and approached BENITEZ about gaining employment. The conversation between CI-1 and BENITEZ was in the Spanish language and was consensually recorded.[4] CI-1 inquired as to the availability of employment at O'Hare Airport. BENITEZ explained to CI-1 that he would need to have identification to be employed at O'Hare International Airport. CI-1 explained that he had obtained identification on 26th Street in Chicago, Illinois. BENITEZ then made copies of the identification documents provided by CI-1. One of the documents was a counterfeit Social Security card. BENITEZ gave CI-1 an application to be filled out. BENITEZ told CI-1 that he would need to have fingerprints taken in order to work at O'Hare Airport after which the following exchange took place:

CI-1:          But would there be a problem if the ...

BENITEZ:    No. No.

CI-1:          ... the documents are like that?

BENITEZ:    No, there is no problem.

CI-1 gave BENITEZ his contact information and departed the business.

13.    On July 31, 2007, CI-1 returned to Ideal Staffing to inquire as to the availability of employment. CI-1 had a conversation with BENITEZ which was consensually recorded.

---

other places, in the Little Village neighborhood in Chicago, Illinois. In that investigation, the information this CI provided proved reliable. This CI is now assisting ICE in this criminal investigation in exchange for parole status which means the person is allowed to remain in the United States legally.

[4] All phone and face-to-face conversations between CI-1 and BENITEZ discussed herein were in the Spanish language.

CI-1 stated that he could not fill out the application because he could not understand it. BENITEZ instructed CI-1 to merely sign the application.

14.    On August 7, 2007, a consensually monitored phone conversation took place between CI-2 and BENITEZ. This phone call was placed by CI-2 to the phone number at Ideal Staffing at approximately 1:50 p.m.   CI-2 called to inquire about the availability of employment.    BENITEZ stated that there was no employment available for females. However, BENITEZ stated that there was employment available for males at the O'Hare International Airport.  CI-2 then asked: "They need to have good papers to work there?" to which BENITEZ replied: "No. No. All they need is the social security and the 'mica' (green card)."

15.    On August 13, 2007, at approximately 9:30 a.m., CI-1 contacted Ideal Staffing by phone regarding possible employment.  A phone conversation between CI-1 and BENITEZ ensued and was consensually monitored. During this phone conversation, BENITEZ stated that there was a possibility workers would be needed at the airport next week.  BENITEZ advised CI-1 that he would need to be fingerprinted for security reasons before being able to work at the airport.

16.    A short time later on August 13, 2007, CI-1 called Ideal Staffing and spoke with BENITEZ again. BENITEZ discussed the process of obtaining O'Hare International Airport identification, and stated that she would include CI-1's application in the next batch of applications submitted to the airport badging office to obtain airport security badges.

-7-

BENITEZ told CI-1 that it would no longer be necessary for him to bring his identification documents since she had already copied them. BENITEZ advised CI-1 that she would call him back after 3:30 p.m. the next day with an update.

17.    On August 14, 2007, BENITEZ contacted CI-1 and told him to report for work the following morning.

18.    On August 15, 2007, CI-1 went into the Ideal Staffing Office as he had been instructed. At the time, CI-1 wore a concealed audio and video recorder to record the interaction. BENITEZ gave him directions to a job-site where he was to report for work. The job-site was later identified as a Qantas warehouse located at 11405 Taft Boulevard, Schiller Park, IL. BENITEZ told CI-1 to speak to a supervisor named "Jim" or "James" at the job-site. BENITEZ stated that the supervisor would give CI-1 a time-card to receive credit for his work hours. BENITEZ instructed CI-1 to request the supervisor to sign his time-card when he stopped working.

19.    During the same August 15, 2007 interaction between BENITEZ and CI-1, CI-1 inquired about obtaining a position at O'Hare Airport. BENITEZ explained that the company did not have any applications available at that time. BENITEZ stated that when she gets the applications, she personally fills them out, signs them and then faxes them in.

20.    During the same August 15, 2007 interaction between BENITEZ and CI-1, CI-1 told BENITEZ that he had recently purchased his identification papers on 26th Street and asked if he would have any problems using those papers to gain employment at the airport.

BENITEZ responded, "No, it doesn't matter if you have a social security or "mica" (green card)." BENITEZ explained, "You see I have all these ... all these persons are working there right now...Many of them have ... all of them have social securities that are ..." To which CI-1 responded, "They have borrowed social securities?" BENITEZ replied, "Yes, all of them with social securities and "micas" ... a total of 130 persons."

21.     On August 15, 2007, at approximately 9:04 a.m., CI-1 departed the Ideal Staffing Office and left for the jobsite as BENITEZ had instructed. As previously noted, the job-site to which BENITEZ referred CI-1 was the Qantas warehouse located at 11405 Taft Boulevard, Schiller Park, IL. This warehouse is located just south of O'Hare Airport, and is outside the "secure area" of the airport facilities.

22.     On August 16, 2007 at approximately 9:00 a.m., CI-1 returned to work at the Qantas warehouse.   After approximately 10 minutes, CI-1 exited the warehouse and explained to me that a supervisor had informed him that there was no work currently available, but that he should return to the warehouse later that night to work the 12:00 a.m. to 8:00 a.m. shift.

23.     On August 16, 2007, at approximately 9:40 a.m., CI-1 placed a phone call to Ideal Staffing and spoke with BENITEZ.  CI-1 related  the following regarding his telephone conversation with BENITEZ: CI-1 told BENITEZ that he was unable to return to work for the shift of employment that Qantas required. BENITEZ advised CI-1 that he should attempt to work that night at the warehouse, but if he was unable to, there would be work available

at the airport next week. BENITEZ explained that Ideal Staffing was going to receive the airport badge applications on Monday, August 20, 2007. BENITEZ stated that after receiving the applications she would then fill them out and that on Tuesday, August 21, 2007, individuals would be taken to the airport to be fingerprinted. BENITEZ stated that employment at the airport is stable and consistent. BENITEZ ended the conversation by advising CI-1 that she would call him early Tuesday (August 21, 2007) morning.

24.     On August 24, 2007, CI-1 went to Ideal Staffing to pick up his compensation check for the work he had done, and to check on the possibility of further employment with Ideal Staffing. At the time, CI-1 was wearing a concealed audio and video recorder to record the interaction. BENITEZ gave CI-1 his check in payment of his wages. The check was issued on a Bank of America account listing "Gurin's Ideal Staffing" as the payor and bore the electronic signature of Individual A. A notation on the check stated that the employee had worked for Swissport. CI-1 inquired as to which day he should report to Ideal Staffing to obtain his fingerprints as part of the airport badging process. BENITEZ told CI-1 to call on Monday, August 27th.

25.     On October 2, 2007, CI-1 phoned BENITEZ to remind her that he was still seeking employment and that he still did not have valid Immigration work authorization documents. CI-1 also stated that he was afraid of being fingerprinted should employment at O'Hare Airport require employee screening. According to CI-1, BENITEZ stated that he should come by her office on Monday, October 8, 2007 and that she had work for him at O'Hare

Airport. BENITEZ stated, in essence, that CI-1 didn't need any documents because she would provide him with someone else's documents and that CI-1 didn't need to worry about being fingerprinted.

26.     On October 4, 2007, I reviewed the airport security badge applications submitted to the CDA for employees of Ideal Staffing. These documents revealed that, at that time, over 120 Ideal Staffing employees had been issued airport security badges. These 120 persons had submitted a total 153 airport security badge applications. Of the 153 applications, Individual A had certified and authorized 134 of the applications. Of the 134 applications submitted with Individual A's certification and authorization, 110 of the applications listed social security numbers that either do not exist or belong to other persons, some of which were deceased. Of those 110 applications, 37 had been certified and authorized by Individual A after Ideal Staffing had been notified by the Social Security Administration ("SSA"), in writing, that the employee's SSN did not match SSA records. This review also revealed that there were 10 airport security badge applications that had been certified and authorized by Individual B after Ideal Staffing had been notified by the Social Security administration, in writing, that the employee's SSN did not match Social Security Administration records.

27.     On October 5, 2007, CI-1 contacted BENITEZ via telephone in order to confirm their appointment on Monday, October 8, 2007. BENITEZ canceled the appointment and stated that she no longer had work for CI-1 for Monday. She stated that CI-1 should contact

her again later in the week.

28.    On October 11, 2007, CI-1 went to the Ideal Staffing Office and spoke with BENITEZ about employment. This conversation was consensually recorded. BENITEZ gave CI-1 a box containing approximately twenty airport security badges. BENITEZ instructed CI-1 to look through the badges and pick one with a picture that most closely resembled his own likeness. CI-1 picked badge #534378, a green color-coded airport security badge that had been issued in the name of "Melqui FIGUEROA" with an expiration date of February 7, 2008. According to CDA records, this badge had been deactivated and should not be used for airport security access.

29.    On October 11, 2007, after CI-1 picked out the airport security badge, BENITEZ instructed CI-1 to report for work at the United Cargo Facility Building located at 610 Cargo Access Road, Chicago, Illinois 60666. BENITEZ provided CI-1 with a work schedule and map to follow to the worksite. CI-1 departed the Ideal Staffing office and then went to the United Airlines facility, as instructed by BENITEZ.

30.    On October 13, 2007, CI-1 went to work at the United Airlines facility located at 610 Cargo Access Road. CI-1 used the airport security badge issued to "Melqui Figueroa" given to him by BENITEZ to gain entry to the building in which he was to work.   CI-1 worked at this facility for approximately two hours.

31.    CI-1 was never fingerprinted, as is required by CDA, prior to being hired by Ideal Staffing and being sent to work within the airport secure area.

### Use of Social Security Numbers by BENITEZ

32.    On October 18, 2006, BENITEZ submitted an application in her own name for an airport security badge. On this application, which was signed by BENITEZ, she used an SSN with the last four digits of 6291. The SSN used was issued to a person with a different name in Iowa in 1973. The application bears the original signature of Individual A with the title "manager of Ideal Staffing" where the application is to be "certified." The date that BENITEZ began employment was omitted from the application. The address BENITEZ listed on the application as her residence was a location on West Grand Avenue in Melrose Park, Illinois 60106. Based on the information provided in this application, BENITEZ was assigned badge #532107.

33.    On June 13, 2007, BENITEZ submitted an application for an airport security badge in her own name. On this application, which was signed by BENITEZ, she used the same SSN that was used on the October 18, 2006 appliation. Individual A, manager of Ideal Staffing, certified this application. The date that BENITEZ began employment on this application was listed as May 03, 2007. The date-of-birth listed on this application was May 3, 1983. The application listed an alien registration number which, according to ICE records, belongs to a lawful permanent resident with a different name and date-of-birth. The address BENITEZ listed on this application as her residence was a location on David Drive in Bensenville, Illinois 60106. Based on a review of available databases as well as surveillance of the area, the address listed on the application does not exist. The signature on this badge

application did not match the signature on file at CDA for Individual A. Based on the information provided in this application, BENITEZ was assigned airport security badge #532107.

## CONCLUSION

34.    Based on the foregoing information, I believe there exists probable cause to believe that BENITEZ did, for the purpose of commercial advantage and private financial gain, conceal, harbor, and shield from detection illegal aliens, knowing and in reckless disregard of the fact that such aliens had come to, entered, and remained in the United States in violation of law, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iii), and did falsely represent, with an intent to deceive, a number to be the social security account number assigned to her by the Commissioner of Social Security, when in fact such number was not the social security account number assigned to her by the Commissioner of Social Security, in violation of Title 42, United States Code, Section 408(a)(7)(B).

FURTHER AFFIANT SAYETH NOT.

STEVE R. FISCHER
Senior Special Agent
Immigration and Customs Enforcement
Department of Homeland Security

SUBSCRIBED and SWORN TO before
me this 6th day of November, 2007.

MARIA VALDEZ
United States Magistrate Judge

-14-